**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE**

**CIVIL ACTION NO. 05-213-DLB**

**JAMES SALISBURY**                                                        **PLAINTIFF**

vs.                     **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION**                           **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff James E. Salisbury filed an application for a period of disability and disability insurance benefits (DIB) on May 8, 2003. His application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on April 26, 2004, in Prestonsburg, Kentucky; a supplemental hearing was held on July 17, 2004. On September 16, 2004, ALJ Andrew Chwalibog issued a denial decision, finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for further review by letter dated June 1, 2005. The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claim.

Plaintiff, who was 54 years old at the time of the hearings, completed a ninth grade education and alleges an inability to work beginning on September 1, 1997, due to breathing problems; tendinitis; right arm and hand pain; pain in his back, right shoulder, and left hand; difficulty sleeping; and prostate problems. At the initial hearing before the ALJ, Plaintiff also indicated that he has pain in his heels and wears insteps in his shoes; he can lift approximately 40 pounds, stand for one hour, and he has difficulty bending; and he has had problems with his prostate since age 40.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on July 1, 2005. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II. DISCUSSION

**A.    Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 10). At Steps 2 and 3, the ALJ found that Plaintiff's back and neck pathologies, obesity, and right shoulder pathology constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 10-11). At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform light level work. (Tr. 12). Specifically, the ALJ found that Plaintiff can:

> walk 4 hours out of 8 and no more than 1 hour at a time; sit 6 hours out of 8 and no more than 1 hour at a time; and he can occasionally climb, balance, stoop, crouch and crawl. He can do no overhead work with his right upper extremity, only occasionally push/pull to weight limits with right upper extremity; should avoid exposure to unprotected heights and moving machinery; and never climb ladder[s] and scaffolds.

(Tr. 12).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a blanker operator. (Tr. 12). At Step 5, however, the ALJ found that there are a significant number of jobs Plaintiff can perform despite his limitations, including hand packer and production inspector at the light level, and assembler and bench work laborer at the sedentary level. (Tr. 13). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.     Analysis**

In this appeal, Plaintiff's sole contention of error is that ALJ's hypothetical question to the vocational expert failed to accurately portray his physical impairments. Specifically, Plaintiff argues that the hypothetical question did not reflect all the limitations imposed by one-time consultative examiner, Dr. Joseph Rapier, whose assessment the ALJ expressly adopted. Plaintiff argues that the ALJ improperly diverged from Dr. Rapier's opinion in two respects: 1) finding that Plaintiff's ability to push/pull and reach is only limited with respect to his right extremity, and 2) omitting Dr. Rapier's vibration restriction. In response, the Commissioner argues that the ALJ properly evaluated all the medical evidence in determining Plaintiff's RFC.

As noted by the ALJ, "there were very few progress notes and no assessments from treating sources" in this case. (Tr. 12). Rather, the relevant medical evidence consisted of opinions from two examining physicians, and two state agency consultants. Plaintiff was examined by Dr. Mark Carter on July 30, 2003. Upon exam, Dr. Carter noted that a rotator cuff stress test on Plaintiff's right shoulder was normal; straight leg raise was normal; he had a normal station and gait; and he could walk on his heels and toes, as well as perform

4

a full squat. (Tr. 128). Dr. Carter performed a pulmonary function test, which revealed a mild restriction, and an x-ray of Plaintiff's lumbar spine revealed marked disc space narrowing at the L5-S1 level. (Tr. 128-29). Despite his complaints of shoulder pain, Dr. Carter noted that Plaintiff's range of motion was intact, and upper and lower extremity strength and deep tendon reflexes were symmetric. (Tr. 129-130). Dr. Carter also diagnosed possible carpal tunnel syndrome, and elevated blood pressure. (*Id.*).

Less than two months later, on August 15, 2003, state agency consultant Dr. James Ross completed a physical functional capacity assessment restricting Plaintiff to medium level work. (Tr. 135-143). Specifically, Dr. Ross opined that Plaintiff can lift/carry 50 pounds occasionally, 25 pounds frequently, and push/pull within those same limits; stand/walk and sit for 6 hours in an 8-hour workday; frequently kneel and crouch; occasionally climb ramps/stairs, stoop, and crawl; and never climb ladders/ropes/scaffolds. Finally, Dr. Ross opined that Plaintiff's ability to reach overhead with his right extremity is limited. Fellow consultant Dr. J.E. Báez-Garcia offered a concurring opinion on October 13, 2003. (Tr. 144-49).

Finally, Plaintiff was referred by his attorney to Dr. Joseph Rapier for an orthopedic evaluation on May 3, 2004.[1] Upon exam, Dr. Rapier noted that Plaintiff had some muscle spasm in his neck and back, though it was more severe in his lower back; he had full range of motion in both shoulders; straight leg raise (seated and supine) was negative; and there was no atrophy in the upper or lower extremities. (Tr. 155). After reviewing Dr. Carter's July 30, 2003 report, Dr. Rapier took AP and lateral x-rays of Plaintiff's cervical and lumbar

---

[1]As noted by the ALJ, this evaluation occurred after Plaintiff's alleged onset date and date last insured. (Tr. 12).

5

spines, which revealed marked disc narrowing and spurring at the L5-S1 level, and mild degenerative changes at the T12-L1 level. (Tr. 156). Dr. Rapier's impression was: degenerative disc disease of the cervical spine without radiculopathy, lumbar strain aggravating pre-existig dormant degenerative disc disease without radiculopathy, and possible mild impingement syndrome to the right shoulder. (*Id*.). He also stated:

> [B]ecause of his chronic neck and back pain[,] I would probably limit his maximum lifting to no more than an occasional twenty pounds and regular lifting 10 pounds or less. It would probably be in his best interest not to do a job which would cause him to do repetitive frequent bending, lifting, turning and twisting. He would also have trouble doing work on a sustained basis at or above shoulder level.

(Tr. 156). Pertinent to this appeal, Dr. Rapier completed a physical RFC form, in which he restricted Plaintiff to: lifting/carrying 20 pounds occasionally, 10 pounds frequently; standing/walking for 4 hours in an 8-hour workday, 1 hour without interruption; sitting for 6 hours in an 8-hour workday, 1 hour without interruption; and occasionally climbing, balancing, stooping, crouching, kneeling, and crawling. (Tr. 158-59). He also opined that Plaintiff was limited in his ability to reach and push/pull, and that he should avoid exposure to heights, moving machinery, and vibration. (Tr. 160).

In determining Plaintiff's RFC, the ALJ expressly considered the assessments of the state agency consultants. (Tr. 12). He also adopted Dr. Rapier's assessment because he was an examining source. (*Id*.). With that evidence in mind, the ALJ assigned Plaintiff the residual functional capacity to perform light level work. (*Id*.). More particularly, the ALJ found that Plaintiff can:

> walk 4 hours out of 8 and no more than 1 hour at a time; sit 6 hours out of 8 and no more than 1 hour at a time; and he can occasionally climb, balance, stoop, crouch and crawl. He can do no overhead work with his right upper extremity, only occasionally push/pull to weight limits with right upper

6

extremity; should avoid exposure to unprotected heights and moving machinery; and never climb ladder[s] and scaffolds.

(Tr. 12).

Plaintiff contends that the ALJ's RFC determination does not "match" the assessment provided by Dr. Rapier and is, therefore, flawed.[2] In particular, Plaintiff argues that Dr. Rapier stated generally that he was limited in his ability to reach and push/pull; whereas the ALJ found specifically that he was only so limited when using his right upper extremity. Plaintiff also argues that the ALJ failed to adopt Dr. Rapier's vibration restriction. Plaintiff contends that, as a result, the hypothetical question to the vocational expert did not accurately portray his physical impairments and thus, the expert's testimony does not constitute substantial evidence upon which the ALJ was entitled to rely.

The Court does not agree. As noted by Plaintiff, "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question will not be deemed inaccurate or incomplete where there is at least some evidence in the record to support it. *See Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam).

In this case, the Court finds that the ALJ's RFC determination is, indeed, supported by substantial evidence. As noted by the ALJ in his written decision, that evidence

---

[2]In essence, Plaintiff argues that by "adopting" Dr. Rapier's opinion, the ALJ's RFC determination was required to mirror his functional capacity assessment.

consisted of opinions from Dr. Rapier, as well as two state agency consultants. (Tr. 12). The state agency consultants, Drs. Ross and Báez-Garcia, both opined that Plaintiff can only occasionally reach overhead with his right upper extremity. Similarly, they did not impose any environmental limitations.

The Court also rejects Plaintiff's argument that the ALJ's RFC determination was required to expressly mirror the restrictions imposed by Dr. Rapier. Although the ALJ stated that he "adopted" Dr. Rapier's assessment, it is clear that it was merely one piece of evidence, among many (including the opinions of the state agency consultants), that he considered in determining Plaintiff's RFC. In fact, the Court notes that the ALJ also found that Plaintiff should never climb ladders or scaffolds. (Tr. 12). This restriction was imposed, not by Dr. Rapier, but by the state agency consultants. Plaintiff does not take issue with the ALJ's decision to adopt this restriction. Finally, the Court notes that the ALJ was not required to give Dr. Rapier's opinion controlling weight, as he was not a "treating source." For all these reasons, the Court concludes that Plaintiff's argument on appeal is without merit.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 16th day of August, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-213-SalisburyMOO.wpd